**LINK: 9**

JS - 6

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCHA LIBRE USA LLC, a Delaware Limited Liability Company; PROMOCIONES ANTONIO PENA S.A. DE C.V., a Mexican Company,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PRO WRESTLING ORGANIZATION, LLC d/b/a NATIONAL WRESTLING ALLIANCE, a North Carolina Limited Liability Company; NWA PRO WRESTLING, LLC, a North Carolina Company; ROBERT TROBICH, an individual; DAVID MARQUEZ, an individual; and DOES 1-10, inclusive,<br><br>                    Defendants. | **Case No. CV 07-7724 GAF (RCx)**<br><br>**MEMORANDUM AND ORDER REGARDING PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT** |

**I.**

**INTRODUCTION**

Plaintiffs Lucha Libre USA, LLC and Promociones Antonio Pena S.A. DE C.V. (collectively, "Plaintiffs") move for default judgment against Defendants Pro Wrestling Organization, LLC (d/b/a National Wrestling Alliance), NWA Pro Wrestling Company, and Robert Trobich (collectively, "Defendants") pursuant to Rule 55 of the Federal

Rules of Civil Procedure.  Among other things, Plaintiffs allege that Defendants are using Plaintiffs' registered trademarks to create the appearance that Defendants' public wrestling events are produced by Plaintiffs.

In their default judgment application, Plaintiffs seek a permanent injunction restraining Defendants from organizing, producing, presenting, and promoting wrestling events that infringe on Plaintiffs' trademarks.  While Plaintiffs assert that they are also entitled to damages, they do not seek such relief at this time.  After examining Plaintiffs' relevant filings, the Court concludes that default judgment against Defendants is appropriate because Plaintiffs have: (1) satisfied all mandatory procedural requirements; (2) justified an entry of default judgment via the allegations of their Complaint; (3) sought a remedy deemed proper by the Court; and (4) shown they are entitled to relief.  Accordingly, Plaintiffs' application for default judgment is **GRANTED**.[1]

## II.

## STATEMENT OF FACTS

After entry of default by the Court Clerk, the factual allegations of the complaint, except for those pertaining to damages, are taken as true in a default judgment proceeding.  <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987).  Along with the complaint, a court may also base its default judgment order on affidavits and/or declarations.  William W. Schwarzer, et al., <u>California Practice Guide: Federal Civil Procedure Before Trial</u> § 6:91, at 6-22 (2005) ("Schwarzer"); <u>see</u> Fed. R. Civ. P. 55(b)(2); <u>see also</u> L.R. 55-2.  The following are the facts as laid out in the Complaint, which are taken as true for purposes of this proceeding.

## A. PLAINTIFFS AND THE MARKS

Plaintiff Lucha Libre is a limited liability company duly organized and existing

---

[1]The Court notes that Plaintiffs' papers include an individual named "David Marquez" in the caption for named Defendants.  Plaintiffs, however, do not move for default judgment as to Marquez. Because the record indicates that he was never served, he is **ORDERED DISMISSED** for non-prosecution and this order does not apply to him.

under the laws of Delaware.  (Compl. ¶ 4.)  Plaintiff Promociones Antonio Pena S.A. DE C.V. is a limited liability Mexican company organized and existing under the laws of Mexico.  (Compl. ¶ 5.)

Over sixteen years ago, Antonio Pena, a well-known ex-wrestler in Mexico, started his own wrestling leagues known as Asistencia Asesoria Y Administracion (the "AAA"), Lucha Libre Latino Americana (the "LLL"), and Promociones Antonio Pena S.A. de C.V. ("PAP") (collectively referred to as the "Lucha Libre Events").  (Compl. ¶ 13.)  The designs for "LLL" and "AAA" are registered with the U.S. Patent and Trademark Office.  (Compl., Ex. 1 [LLL Service Mark; AAA Service Mark].)

Some of the wrestlers who perform in the Lucha Libre Events go by stage names such as "Latin Lover," "La Parka," "Psicosis," and "Mascara Sagrada" (collectively referred to as the "Lucha Libre Wrestlers").  (Compl. ¶ 17.)  These names are also registered with the U.S. Patent and Trademark Office.  (Compl. ¶ 17; id., Ex. 3 ["La Parka" Service Mark; "Psicosis" Service Mark; "Mascara Sagrada" Service Mark; "Latin Lover" Service Mark].)  The trademarks for Lucha Libre Events (Compl., Ex. 1) and Lucha Libre Wrestlers (Compl., Ex. 3) are collectively referred to as "Plaintiffs' Marks."  Most, if not all, wrestlers performing in Lucha Libre Events are, by contract, employees of Plaintiffs and are not permitted to perform for any other wrestling organizations unless given express permission by Plaintiffs.  (Compl. ¶ 18.)

In 2006, Plaintiff Lucha Libre (successor in interest to Latin Media Group, LLC) received a license from Promociones Antonio Pena S.A. DE C.V. to be the exclusive licensee for Plaintiffs' Marks in connection with organizing, producing, presenting, and promoting Lucha Libre Events in the United States and Canada.  (Compl. ¶ 20.)

Since their founding, the Lucha Libre Events have become the premier and most watched wrestling events in Mexico.  (Compl. ¶ 13.)   Wrestling has become one of the most popular and highly attended forms of sports entertainment in Mexico, second only to soccer events.  (Compl. ¶ 14.)  Lucha Libre Events frequently sell out 20,000 seat venues.  (Id.)  Lucha Libre Events are frequently aired in the United

3

States on cable television channels, such as Galavision, which is the largest Spanish-speaking cable network in the United States.  (Id.)  Since 2006, Plaintiff Lucha Libre has organized, produced, presented, and promoted shows in 44 different markets in the United States and Canada, drawing a total of almost six hundred thousand viewers.  (Compl. ¶ 21.)

**B.  DEFENDANTS AND THE INFRINGEMENT**

Defendant Pro Wrestling Organization LLC is a limited liability company formed under the laws of North Carolina, and doing business under the assumed name "NWA Pro Wrestling," also a limited liability company.  (Compl. ¶¶ 6-7.)  NWA Pro Wrestling has an office and place of business in North Carolina.  (Compl. ¶ 7.)  Defendant Robert Trobich is the Executive Director and General Counsel to NWA Pro Wrestling. (Compl. ¶ 8.)

In August 2007, it was brought to Plaintiffs' attention that Defendants, with full knowledge of the existence of Plaintiffs' Marks, were organizing, advertising, and promoting a wrestling event using Plaintiffs' Marks at the Orleans Arena in Las Vegas, Nevada.  (Compl. ¶ 23; see also Blakely Decl., Ex. 3 [Advertisement].) These advertisements promoted "LA Parka" and "Original Psicosis."  (Blakely Decl. ¶ 16; id., Ex. 3.)[2]  On August 16, 2007, Plaintiffs' counsel sent Defendants a cease and desist letter, putting Defendants on notice that their Las Vegas show was infringing on Plaintiffs' Marks.  (Compl. ¶ 23; id., Ex. 4 [8/16/07 Cease and Desist Letter].) Defendant Trobich sent Plaintiffs' counsel a letter on August 23, 2007, indicating that no wrestler would appear in the Las Vegas event billed with the names "Psicosis,"

---

[2]While Plaintiffs allege that Defendants were using Plaintiffs' Marks, the evidence provided actually suggests that Defendants were using stage names that were nearly identical to Plaintiffs' Marks but with immaterial modifications.  (Plaintiffs allege Defendants advertised wrestlers named "LA Parka" (not "La Parka") and "Original Psicosis" (not "Psicosis").  (See Blakely Decl. ¶ 16; id., Ex. 3 [Advertisement].)  Accordingly, these minor differences in stage names do not change the analysis and the Court concludes that Plaintiffs have adequately alleged their trademark infringement (and other) claims, and that the Eitel factors weigh in favor of granting Plaintiffs' application, see below.  Whether or not the stage names used were identical to Plaintiffs' Marks, Plaintiffs sufficiently allege that these marks were confusingly similar and deceived the public as to the source of these wrestling events.

1    "Mascara Sagrada," or "La Parka." (Compl., Ex. 5 [8/23/07 Trobich Letter].) Trobich

2    also indicated that with regard to "La Parka," no wrestler would appear "with the

3    design and color scheme noted as attendant to the mark." (Id.) Contrary to the

4    assurances made by Defendants in the Trobich letter, and as a result of Plaintiffs'

5    follow-up investigation, Plaintiffs learned that Defendants intentionally, knowingly, and

6    willfully infringed upon Plaintiffs' Marks by using wrestlers with the same look and

7    likeness of the Lucha Libre Wrestlers and using the stage names that comprise

8    Plaintiffs' Marks, without Plaintiffs' consent, in order to deceive the public as to the

9    origin and actual identity of Defendants' wrestlers. (Compl. ¶ 25.) Defendants'

10    wrestling events continue to wrongfully use Plaintiffs' Marks, or marks that are

11    confusingly similar thereto, in order to confuse or deceive the public as to the origin

12    and actual identity of Defendants' wrestlers. (See Compl. ¶¶ 28, 35-36.)

**III.**

**DISCUSSION**

**A. THE LEGAL STANDARDS**

    **1. PROCEDURAL REQUIREMENTS FOR DEFAULT JUDGMENT APPLICATIONS**

      Rule 55(b) of the Federal Rules of Civil Procedure permits a court-ordered

default judgment following the entry of default by the Court Clerk under Rule 55(a).

Elektra Entm't Group, Inc. v. Bryant, No. 03-6381 GAF (JTLx), 2004 WL 783123, at *1

(C.D. Cal. Feb. 13, 2004) (citing Kloepping v. Fireman's Fund, No. C 94-2684 (TEH),

1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)). The Federal and Local Rules both

require that applications for default judgment set forth the following information: (1)

when and against which party default was entered; (2) the identification of the

pleadings to which default was entered; (3) whether the defaulting party is an infant or

incompetent person, and if so, whether the person is adequately represented; (4) that

the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of

the application has been served on the defaulting party, if required. Fed. R. Civ. P.

5

55(b)(2); L.R. 55-1.  Notice is not required, however, if the party against whom default judgment is brought has not appeared in the action.  See Fed. R. Civ. P. 55(b)(2).

### 2. FACTORS FOR DETERMINING WHETHER TO GRANT DEFAULT JUDGMENT

According to Rule 55, the choice as to whether a default judgment should be entered is at the sole discretion of the trial court.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  Thus, a defendant's default alone does not entitle a plaintiff to a court-ordered judgment.  See id.  Instead, the Ninth Circuit has held that the following factors should be examined before any decision regarding the issuance of a default judgment is made:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  However, even "[i]n applying this discretionary standard, default judgments are more often granted than denied." PepsiCo, Inc. v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

### B. ANALYSIS

#### 1. PLAINTIFFS HAVE FULFILLED THE PROCEDURAL REQUIREMENTS FOR DEFAULT JUDGMENT APPLICATIONS UNDER RULE 55(B)(2) AND LOCAL RULE 55-1

Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Rule 55(b)(2) and Local Rule 55-1.  Plaintiffs demonstrate that: (1) default was entered against Defendants Pro Wrestling Organization LLC (d/b/a National Wrestling Alliance), NWA Pro Wrestling LLC, and Robert Trobich on January 31, 2008 (Blakely Decl. ¶ 7; id., Ex. 1 [Entry of Default]); (2) default was entered as to the Complaint (see id., Ex. 1 [Entry of Default]); (3) Defendants are neither minors nor incompetent persons (Blakely Decl. ¶ 3); and (4) the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply (id.).  Even though notice of service of the default judgment application was not required, as Defendants have not answered or

6

otherwise appeared in this action, <u>see</u> Fed. R. Civ. P. 55(b)(2), Plaintiffs served the instant application on Defendants on February 13, 2008.  (Blakely Decl. ¶ 4.) Accordingly, Plaintiffs have fulfilled all of the procedural requirements for a default judgment application.

**2. THE <u>EITEL</u> FACTORS SUPPORT GRANTING DEFAULT JUDGMENT**

**a. Possibility of Prejudice to Plaintiff**

With respect to the first <u>Eitel</u> factor, Plaintiffs would suffer a significant amount of prejudice if default judgment was not entered in this case.  Without entry of default judgment, Defendants would be free to promote or advertise wrestling events in a manner which infringes on Plaintiffs' Marks and deceives or confuses the public into believing that these events are promoted by Plaintiffs.  Plaintiffs would also suffer a loss of goodwill associated with Plaintiffs' Marks.  Furthermore, Defendants' failure to answer or otherwise respond to the Complaint leaves Plaintiffs with no other means of recourse against Defendants.  It would be highly prejudicial for the Court to take away Plaintiffs' last means of recovery against Defendants' illegal activities.

**b. Substantive Merits and Sufficiency of the Complaint**

The combination of the second and third <u>Eitel</u> factors has been evaluated by the courts to "require that a plaintiff state a claim on which the [plaintiff] may recover." <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citations and quotation marks omitted) ("<u>Cal. Sec. Cans</u>").  This simply requires the Court to examine the Complaint to determine whether Plaintiffs' claims are adequately pled.  The Complaint alleges four causes of action: (1) trademark infringement; (2) federal unfair competition (false designation of origin); (3) trademark dilution; and (4)

1   common law unfair competition and trademark infringement.[3]  Each is discussed in

2   turn below.

3                              *i.  Trademark Infringement*

4            To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a

5   plaintiff must prove that, without its consent, the defendant "use[d] in commerce any

6   reproduction, counterfeit, copy, or colorable imitation of a registered mark in

7   connection with the sale, offering for sale, distribution, or advertising of any goods or

8   services on or in connection with which such use is likely to cause confusion, or to

9   cause mistake, or to deceive[.]"  15 U.S.C. § 1114(1)(a); see also 4 McCarthy on

10  Trademarks and Unfair Competition § 23:1 (4th ed. 2007) ("Infringement of federally

11  registered marks is governed by the test of whether the defendant's use is 'likely to

12  cause confusion, or to cause mistake, or to deceive.'") (citation omitted).

13           It is evident from the Complaint that Plaintiffs have sufficiently stated a claim for

14  trademark infringement.  Plaintiffs have alleged ownership in Plaintiffs' registered

15  trademarks.  (Compl. ¶¶ 13, 17; id., Ex. 1, 3.)  They further allege that Defendants

16  used Plaintiffs' Marks in commerce to promote their wrestling events, without

17  Plaintiffs' consent and in a manner suggesting that those wrestling events were

18  organized, advertised, and promoted by Plaintiffs.  (E.g., Compl. ¶¶ 23, 26.)  Plaintiffs

19  allege that Defendants' use of Plaintiffs' Marks is likely to cause confusion and

20  damage Plaintiffs' accumulated goodwill.  (Id. ¶¶ 27-28.)

21                          *ii.  False Designation of Origin*

22           Title 15 U.S.C. § 1125(a)(1) provides that any person who, in connection with

23  goods or services, uses in commerce "any word, term, name, symbol, or device, or

24  any combination thereof, or any false designation of origin, false or misleading

25  _____

26  [3]The Court notes that the causes of action listed on the face page of the Complaint differ from
    the causes of action contained in the body of the Complaint.  The face page includes the
27  trademark-related claims discussed in the text above, and also indicates that the Complaint
    includes a claim under Cal. Business & Professions Code § 17200; that claim is not included in
28  the body of the Complaint.  The Court approaches this motion on the basis of only those claims
    set forth in the body of the Complaint.

description of fact, or false or misleading representation of fact" which is: (A) likely to cause confusion, cause mistake, or deceive as to the origin, sponsorship, or approval of those goods or services; or (B) used in commercial advertising or promotion and misrepresents the nature, characteristics, qualities, or geographic origin of goods or services, "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."  15 U.S.C. § 1125(a)(1).

Plaintiffs have sufficiently stated a claim for false designation of origin under Section 1125(a).  Plaintiffs assert that Defendants' use of Plaintiffs' Marks in advertising Defendants' wrestling events is likely to cause confusion among the viewing public, who are likely to believe that those events originate with, are sponsored by, or are otherwise approved by, Plaintiffs.  (<u>E.g.</u>, Compl. ¶¶ 35-36.)

### iii. Trademark Dilution

To establish a claim for trademark dilution, a plaintiff must show that: (1) its trademarks are famous; (2) defendant is making commercial use of plaintiff's trademarks in commerce; (3) defendant's use began after plaintiff's trademarks became famous, and (4) defendant's use dilutes the quality of plaintiff's trademarks by diminishing their capacity to identify and distinguish goods and services.  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1324 (9th Cir. 1998) (<u>citing</u> 15 U.S.C. § 1125(c)).

Plaintiffs have sufficiently stated a claim for trademark dilution.  Plaintiffs allege that: (1) Plaintiffs' Marks are famous (<u>e.g.</u>, Compl. ¶¶ 14-16, 21); (2) Defendants are making commercial use of Plaintiffs' Marks in commerce (<u>see</u> <u>id.</u> ¶ 23); (3) Defendants' use began after Plaintiffs' Marks became famous (<u>compare</u> <u>id.</u> ¶¶ 14-16, 21 <u>with</u> <u>id.</u> ¶ 23); and (4) Defendants' use dilutes the quality of Plaintiffs' Marks by diminishing their capacity to identify and distinguish goods and services (<u>id.</u> ¶ 40).

### iv. Common Law Unfair Competition

Common law unfair competition in California requires "(1) that [plaintiff] had invested substantial time, skill, or money in its property; (2) that [defendant]

9

1    appropriated and used [plaintiff's] property at little or no cost; (3) that [defendant's]

2    appropriation and use . . . was without the authorization or consent of [plaintiff]; and

3    (4) that [plaintiff] could establish that it has been injured[.]"  City Solutions, Inc. v.

4    Clear Channel Commc'ns, 365 F.3d 835, 842 (9th Cir. 2004).

5        Plaintiffs have sufficiently stated a claim for common law unfair competition.

6    Plaintiffs assert that: (1) they invested substantial time, skill, and money into Plaintiffs'

7    Marks (see Compl. ¶¶ 13-21); (2) Defendants appropriated and used Plaintiffs' Marks

8    at little or no cost (see id. ¶¶ 23, 26, 43); (3) Defendants' appropriation and use was

9    without Plaintiffs' authorization or consent (see id. ¶ 26); and (4) Plaintiffs can

10   establish that they have been injured (see id. ¶¶ 27, 44-45).

11                    ***v. Conclusion***

12       Accordingly, the Court concludes the second and third Eitel factors weigh in

13   favor of entering default judgment.  See Cal. Sec. Cans, 238 F. Supp. 2d at 1175.

14                  **c. Amount at Stake**

15       Pursuant to the fourth Eitel factor, "the court must consider the amount of

16   money at stake in relation to the seriousness of [the defendant's] conduct."  Cal. Sec.

17   Cans, 238 F. Supp. 2d at 1176; see also Eitel, 782 F.2d at 1471-72.  As Lucha Libre

18   Events are frequently held in, and sell out, 20,000 seat venues (Compl. ¶ 14), it is

19   likely that Defendants have profited greatly from selling tickets to Defendants'

20   wrestling events that deceive the public into believing that those events are organized,

21   advertised, and promoted by Plaintiffs.  This factor, as it relates to a specific amount

22   of damages, however, is not at issue, as Plaintiffs do not request damages in their

23   application.[4]

24   _____

25   [4]Plaintiffs do not seek damages in their application, but note that they are entitled to damages
     for trademark infringement under 15 U.S.C. § 1117(a).  Plaintiffs assert that since they have not
26   had an opportunity to conduct adequate discovery on Defendants' ticket sales for those events
     advertised using Plaintiffs' Marks, Plaintiffs request that "this Court keep this case open until
27   Plaintiffs can obtain this information from subpoenas of third parties."  (App. at 9.)  While
     Plaintiffs are entitled to seek actual damages under Section 1117(a) (which expressly allows for
28   Plaintiffs to seek Defendants' profits as damages), they have presented the Court with no
                                                                                          (continued...)

### d.  Possibility of Dispute

The fifth <u>Eitel</u> factor considers the possibility of dispute as to any material facts in the case.  Upon entry of default, all well-pleaded facts in the complaint are presumed true, except those relating to damages.  <u>TeleVideo</u>, 826 F.2d at 917-18.

Here, Plaintiffs filed a well-pleaded Complaint alleging the facts necessary to establish their claims, and the Court Clerk entered default against Defendants.  As such, there is no genuine dispute regarding the material facts, and thus this <u>Eitel</u> factor favors entry of default judgment.

### e.  Possibility of Excusable Neglect

The sixth <u>Eitel</u> factor considers the possibility that the default resulted from excusable neglect.  Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered.  <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).

Plaintiffs have presented evidence that all Defendants were served on December 11, 2007.  (Docket Nos. 3-6.)  Defendants have had more than enough time to respond, but have not filed an answer or otherwise appeared in this action.  Moreover, Plaintiffs have presented evidence that Defendants are aware that Plaintiffs allege Defendants are infringing upon Plaintiff's Marks.  (<u>See</u> Compl., Ex. 4 [8/16/07 Cease and Desist Letter]; Ex. 5 [8/23/07 Trobich Letter in response].)  It appears evident, then, that Defendants are aware of the pending action against them, but have

---

[4](...continued)
authority for the proposition that they Court should enter a default judgment and then allow the case to remain open.  Indeed, the request is inconsistent with Fed. R. Civ. P. 54, which contemplates that, in most cases, only a single judgment should be entered and only when all claims as to all parties have been resolved.  This issue was discussed with Plaintiffs' Counsel at the hearing on the motion for default judgment, and Counsel has since advised the Court that her clients wish to proceed with the application for injunctive relief in lieu of seeking a damage award.  (<u>See</u> 3/12/08 Notice to Proceed with Application for Default Judgment.)

1  deliberately chosen not to answer or respond in any way.  Accordingly, this <u>Eitel</u> factor

2  also favors entry of default judgment.

3  **f.  Policy Favoring Decisions on the Merits**

4  Finally, the mere existence of Rule 55(b) indicates that the seventh <u>Eitel</u> factor

5  is not alone dispositive.  <u>See</u> <u>Cal. Sec. Cans</u>, 238 F. Supp. 2d at 1177 ("Moreover,

6  [d]efendant's failure to answer [p]laintiff's [c]omplaint makes a decision on the merits

7  impractical, if not impossible.  Under [Rule] 55(a), the termination of a case before

8  hearing the merits is allowed whenever a defendant fails to defend an action.").  This

9  is precisely what occurred in the present case.  Accordingly, this <u>Eitel</u> factor does not

10  preclude the Court from entering default judgment against Defendants.  <u>See</u> <u>id.</u>

11  In sum, a balancing of the <u>Eitel</u> factors overwhelmingly favors granting default

12  judgment against Defendants.

13  **3. REMEDIES**

14  Rule 54(c) provides that "[a] default judgment must not differ in kind from, or

15  exceed in amount" what is prayed for in the Complaint.  As noted above, Plaintiffs do

16  not seek damages in their default judgment application, and instead seek a

17  permanent injunction.  Plaintiffs specifically requested a permanent injunction in their

18  Complaint.  (<u>E.g.</u>, Compl. Prayer For Relief at 10-11.)  Moreover, the Court concludes

19  that a permanent injunction is warranted.

20  Title 15 U.S.C. §1116(a) provides that "[t]he several courts vested with

21  jurisdiction of civil actions arising under this chapter shall have power to grant

22  injunctions, according to the principles of equity and upon such terms as the court

23  may deem reasonable, to prevent the violation of any right of the registrant of a mark

24  registered in the Patent and Trademark Office or to prevent a violation under

25  subsection (a), (c), or (d) of section 1125 of this title."  15 U.S.C. § 1116(a).

26  As noted above, Plaintiffs' Marks are registered with the U.S. Patent and

27  Trademark Office.  (Compl., Exs. 1, 3.)  The Court has concluded, moreover, that

28  based on the allegations in the Complaint which are taken as true, Defendants are

violating 15 U.S.C. § 1125(a) (false designation of origin) and 15 U.S.C. § 1125(c) (trademark dilution).  Further, Defendants' failure to respond in any way to this action does not assure the Court that Defendants have stopped, or will stop, their infringing activity, which is yet another reason why granting a permanent injunction is appropriate.  E.g., Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting permanent injunction as part of default judgment in copyright infringement action in part because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease").  Accordingly, the Court concludes that a permanent injunction is an appropriate remedy in this action. The Court therefore enjoins Defendants, their officers, agents, employees, attorneys, and all persons acting in concert, participation, or combination with Defendants, from the following:

      (a) Organizing, producing, presenting, and promoting wrestling events that feature Plaintiffs' Marks;

      (b) Using Plaintiffs' Marks to falsely represent or falsely designate the origin and sponsorship of Defendants' wrestling events as being sponsored, approved, licensed, or otherwise affiliated with Plaintiffs;

      (c) Advertising or promoting wrestling events featuring characters which are identical, or confusingly similar to, Plaintiffs' Marks;

      (d) Advertising with unauthorized promotional wrestling materials containing any of Plaintiffs' Marks;

      (e) Engaging in any conduct that tends to falsely represent that, or is likely to confuse, mislead, or deceive consumers or members of the public that, the actions of Defendants and any events promoted by Defendants are sponsored, approved, licensed, or otherwise affiliated with Plaintiffs.

Moreover, pursuant to 15 U.S.C. § 1116(a), the Court **ORDERS** Defendants to file with the Court, and serve on Plaintiffs, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with this injunction.

1  This report must be filed with the Court, and served on Plaintiffs, within **thirty (30)**

2  **calendar days** of service of this Order on Defendants.

3  **IV.**

4  **CONCLUSION**

5       For the foregoing reasons, Plaintiffs' application for default judgment is

6  **GRANTED**.  Defendants are **ENJOINED** from using Plaintiffs' Marks in any manner

7  described in this Order.  Defendants are further **ORDERED** to file with the Court, and

8  serve on Plaintiffs, a compliance report, described above, within thirty (30) calendar

9  days of service of this Order on Defendants.

10

11       IT IS SO ORDERED.

12

13  DATED: March 14, 2008

14

15  _____
    Judge Gary Allen Feess
    United States District Court

16

17

18

19

20

21

22

23

24

25

26

27

28

14